**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **KENICHI NINOMIYA**<br>*Plaintiff, Pro Se,*<br><br>v.<br><br><br>**CHARLES D. RIVIEZZO**<br>**BRANE-STROM, LLC**<br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Case No. 1:25-cv-01692-MSN-LRV**

## PLAINTIFF'S CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS [1]

## I.   INTRODUCTION

Plaintiff Kenichi Ninomiya, proceeding *pro se*, respectfully submits this CONSOLIDATED MEMORANDUM IN OPPOSITION TO THE MOTIONS TO DISMISS filed by Defendant Brane-Strom, LLC [ECF No. 23] and Defendant Charles D. Riviezzo [ECF No. 28].

Defendants seek to dismiss this action by mischaracterizing a federal human trafficking case as a trivial "wage dispute" or a misunderstanding over "volunteer" services. This narrative is factually unsustainable. As the First Amended Complaint ("FAC") and the attached evidentiary exhibits demonstrate, this action arises under the **Trafficking Victims Protection Reauthorization Act ("TVPRA")**, 18 U.S.C. §§ 1589 and 1595. The record shows that Defendant Charles D. Riviezzo — acting as the President, CEO, and General Counsel of

---

[1] The United States District Court for the Eastern District of Virginia was **officially closed** on Monday, **January 26,** and Tuesday, **January 27, 2026, due to inclement weather.** Pursuant to **Fed. R. Civ. P. 6(a)(3),** this filing is timely submitted on the first accessible business day.

Brane-Strom, LLC — knowingly obtained Plaintiff's specialized IT labor by means of explicit, recorded threats to inflict **serious financial harm** on a third party: Plaintiff's spouse.

The FAC alleges, with specific factual support, that:

1. **Plaintiff was a Professional, Not a Volunteer:** Defendants' claim that Plaintiff's services were voluntary is refuted by their own conduct. Defendants ratified Plaintiff's status as a specialized professional by paying **Invoice #005** at a rate of **$75.00 per hour (See Exhibit C)**.

2. **Explicit Threats of Serious Harm:** When Plaintiff attempted to cease providing unpaid labor due to non-payment, Defendant Riviezzo did not accept the resignation. Instead, on **July 18, 2015**, he was recorded stating: **"If you shut down the service, the pay will be cut off – all of it."** On **August 24, 2015**, he escalated the threat, stating: **"Michael [Plaintiff's spouse] is going to get fired"** if Plaintiff did not continue the work **(See Exhibit A)**.

3. **Execution of the Threat:** Plaintiff continued working solely because of these threats. When Plaintiff finally ceased working on **October 7, 2015**, the "Out of Service" message appeared on the Owner's screen **(See Exhibit E)**, and Defendants executed their threat immediately. On **October 8, 2015** — the very next day — Defendants terminated Plaintiff's spouse, confirming that the threat was real and the coercion was intentional.

These actions satisfy every element of forced labor under 18 U.S.C. § 1589(a), which expressly prohibits obtaining labor by means of "threats of serious harm to... another person."

Furthermore, Defendant Riviezzo's procedural attempt to dismiss for insufficient service under Rule 12(b)(5) must be denied. The record confirms that Plaintiff, proceeding *in forma*

*pauperis*, timely submitted the required **USM-285 forms** to the U.S. Marshals Service on **October 27, 2025 (See Exhibit D)**. Any delay in service is attributable to the Marshals, establishing "good cause" for an extension under Federal Rule of Civil Procedure 4(m).

**Accordingly, the Motions to Dismiss are without merit and should be denied.**

## II.    STATEMENT OF FACTS

### A. Plaintiff Was a Specialized Professional, Not a "Volunteer"

1. **Corporate Investment:** Defendants' claim that Plaintiff was a "volunteer" is contradicted by their own financial investments. On **May 2, 2015**, Brane-Strom Manager Connie Hall used the corporate American Express card to purchase **"CompTIA A+ Premier Bundle"** training materials for Plaintiff at a cost of **$368.00**. A company does not prepay for professional certification for a "volunteer" it has no intention of hiring.

2. **Ratification of Professional Status:** On **July 24, 2015**, Brane-Strom paid Plaintiff's **Invoice #005** for **"Intel AMT Specialized Service"** at a rate of **$75.00 per hour** via Check #18200 signed by Connie Hall **(See Exhibit C)**. This payment legally ratified that Plaintiff was a professional independent contractor, distinct from his spouse, and that the agreed value of his labor was $75/hour.

3. **Owner Knowledge & Designation:** Plaintiff was explicitly designated as **"System Administrator"** and **"Responsible IT tech"** on the dedicated horse racing television equipment installed at the Company Owner's primary residence. This standby message, displayed daily to the Owner, confirms the Company knowingly relied on Plaintiff's professional services **(See Exhibit E, Page 2)**.

### B. The "Option C" Scheme:  Blocking Plaintiff's Exit

4. **Attempt to Resign:**  On **July 17, 2015**, after completing specific IT projects, Plaintiff attempted to cease working due to non-payment. He texted Defendant Riviezzo offering two choices: "(a) Continue my service [for pay]... or (b) **Stop my service immediately.**"

5. **Imposition of the Scheme:**  Defendant Riviezzo rejected the option to stop. He texted back imposing a unilateral **"Option C"**: to **"keep doing what you're doing"** and suggested Plaintiff take money from his spouse's salary **(See Exhibit B)**.

6. **The Demand:**  When Plaintiff resisted, Riviezzo commanded: **"I can only suggest you try to be cooperative. In the meantime, please keep things running."** (August 13, 2015). This confirms Defendants were actively soliciting and directing Plaintiff's labor, not merely accepting "voluntary" help.

### C. The Threats of Serious Harm (18 U.S.C. § 1589)

7. **Explicit Financial Threats:** When the "Option C" deflection failed to satisfy Plaintiff, Defendant Riviezzo escalated to explicit threats of serious financial harm to compel compliance.

   o **July 18, 2015 (Recorded):**  Riviezzo stated: **"Kenichi, let me make one thing clear. If you shut down the service, the pay will be cut off – all of it."** This referred to the salary of Plaintiff's spouse, the household's sole income source.

   o **August 24, 2015 (Recorded):**  Riviezzo escalated the threat: **"All I'm telling you Ken is that, if you don't do it... then Michael [Plaintiff's spouse] is going to get fired." (See Exhibit A)**.

8. **Nature of the Harm:**  These were not warnings of natural consequences; they were extortionate threats to leverage a third party's employment to extract unpaid labor from Plaintiff.

## D. Causation and Execution of the Threat

9. **Forced Labor Period:**  Solely because of these threats, Plaintiff was compelled to continue providing IT services (maintaining the live horse racing broadcast system) against his will for approximately **10 weeks** (July 18, 2015 – October 7, 2015).

10. **The Trigger Event:  On October 7, 2015**, Plaintiff ceased working. The dedicated screen in the Owner's residence immediately displayed a **"Temporary Out of Service"** message identifying Plaintiff as the administrator **(See Exhibit E, Page 1)**.

11. **Retaliation:**  Upon seeing this disruption, Defendants executed their threat immediately. On **October 8, 2015** — the very next day — Defendants terminated Plaintiff's spouse.

12. **Confirmation of Motive:**  During the termination meeting on October 8, 2015, Larry Rose (Brane-Strom employee) confirmed the retaliatory motive, stating that the owner had said: **"That's it, I'm done with both of 'em... Cut them loose."** This confirms the Defendants viewed Plaintiff and his spouse as a single economic unit to be exploited and punished collectively.

## III. ARGUMENT

### A. Defendant Riviezzo's Motion to Dismiss for Insufficient Service (Rule 12(b)(5)) Must Be Denied

Defendant Riviezzo argues for dismissal because he has not been personally served. This argument fails because Plaintiff has established "good cause" for the delay under Federal Rule of Civil Procedure 4(m).

1. **Reliance on U.S. Marshals:** Plaintiff is proceeding *in forma pauperis* ("IFP"). Under 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3), "the officers of the court [U.S. Marshals] shall issue and serve all process."

2. **Plaintiff Fulfilled His Duty:** The record confirms Plaintiff submitted the required **USM-285 forms** for both Defendants on **October 27, 2025 (See Exhibit D)**. While the Marshals successfully served the corporate defendant on November 7, any delay in serving Riviezzo personally is attributable to the Marshals, not to the Plaintiff.

3. **Legal Standard:** Courts within the Fourth Circuit and across the country consistently hold that an IFP litigant who provides the necessary information to the Marshals constitutes "good cause" for an extension of the service deadline. Dismissing the case for the Marshals' administrative delay would be a miscarriage of justice. The proper remedy is for the Court to direct the Marshals to complete the service Plaintiff already requested.

### B. The Complaint Plausibly Alleges Forced Labor Under 18 U.S.C. § 1589 (Rule 12(b)(6))

Defendants argue that threatening to fire a spouse is not "force" and that Plaintiff was merely a "volunteer." These arguments contradict the plain text of the **Trafficking Victims Protection Reauthorization Act ("TVPRA")** and the evidentiary record. To state a claim,

Plaintiff must show: (1) Defendants obtained his labor; (2) by prohibited means; (3) with knowledge (scienter). *United States v. Luong*, 125 F.4th 147, 154 (4th Cir. 2025). The First Amended Complaint ("FAC") satisfies every element of this "multistep showing of culpability."

1. **Defendants "Obtained" Plaintiff's Labor (Refuting the "Volunteer" Defense):** Defendants claim they "never asked" Plaintiff to perform services or that he was a volunteer. This is factually false.

   o **Admissions of Work:**  In a recorded meeting on August 6, 2015, Brane-Strom Manager Connie Hall admitted: **"We all knew that you did work."**

   o **Ratification by Payment:**  Defendants ratified Plaintiff's status as a professional independent contractor — not a volunteer — by paying **Invoice #005** on July 24, 2015, at a rate of **$75.00 per hour** for "Intel AMT Specialized Service" **(See Exhibit C).**  A company does not pay hourly invoices to a "volunteer."

   o **Direct Orders:**  Defendant Riviezzo explicitly directed the labor. On August 13, 2015, he texted Plaintiff: **"In the meantime, please keep things running."** This was a command to work, not an acceptance of charity.

2. **Defendants Used Prohibited Means:  "Threats of Serious Harm" (§ 1589(a)(2)):** The TVPRA expressly prohibits obtaining labor by means of "threats of serious harm to that person *or* **another person.**" 18 U.S.C. § 1589(a)(2).

o **Threats to "Another Person":** Defendant Riviezzo explicitly threatened a third party: Plaintiff's spouse, Michael Oliver.

  ▪ <u>July 18, 2015</u>:    **"If you shut down the service, the pay will be cut off – all of it."**

  ▪ <u>August 24, 2015</u>: **"All I'm telling you Ken is that, if you don't do it... then Michael is going to get fired."**

o **Financial Harm is "Serious Harm":** Under § 1589(c)(2), *"serious harm"* includes *"financial"* harm sufficiently serious to compel a reasonable person to perform labor. Threatening to destroy a family's sole source of income by firing a spouse fits this definition perfectly. *See United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011). The Fourth Circuit recognizes that § 1589 prohibits "nonviolent coercion." *Muchira v. Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017).

3. **Defendants Used a "Scheme, Plan, or Pattern" (§ 1589(a)(4)):** Defendants engaged in a calculated scheme to trap Plaintiff in service.

   o **The "Option C" Scheme:** On July 17, 2015, Plaintiff texted Riviezzo offering to "(b) Stop my service immediately." Riviezzo rejected this choice. He texted back imposing a unilateral **"Option C":** to **"keep doing what you're doing"** and suggested Plaintiff take money from his spouse's salary **(See Exhibit B)**.

   o **Effect:** This scheme was intended to cause Plaintiff to believe that he could not quit without causing immediate financial ruin to his family.

4. **Causation and Execution of the Threat:** Defendants argue Plaintiff's labor was not "forced" because he eventually quit. This ignores the 10 weeks of coerced labor **before** he quit.

- **Nexus:** Plaintiff continued working from July 18 to October 7 **solely** to prevent the execution of Riviezzo's threats.

- **The Trigger and Execution:** When Plaintiff finally stopped working on **October 7, 2015**, the *"Out of Service"* screen appeared **(Exhibit E)**. Defendants executed their threat immediately. On **October 8, 2015** — the very next day — Defendants terminated Plaintiff's spouse.

- **Confirmation:** During the termination, Brane-Strom representative Larry Rose confirmed the collective punishment, stating the owner had said: **"That's it, I'm done with both of 'em... Cut them loose."** This proves the firing was a direct retaliation for Plaintiff stopping his labor.

## C. Defendant Riviezzo and Brane-Strom, LLC Are Liable

1. **Riviezzo's Scienter (Willfulness):** Defendant Riviezzo is a **licensed attorney** *(admitted to the New York State Bar Association in 1984)* and former law firm partner. As General Counsel, he knew or should have known that conditioning a third party's employment on Plaintiff's unpaid labor was unlawful. His conduct was not accidental; it was a knowing and willful violation of the TVPRA.

2. **Corporate Liability (18 U.S.C. § 1595):** Defendant Riviezzo was the CEO and General Counsel of Brane-Strom. Under the doctrine of *respondeat superior*, his acts are the acts of the company. Furthermore, Brane-Strom **"knowingly benefitted"** from the venture by receiving valuable IT services work (maintaining live international broadcast receiving systems) without paying Plaintiff for his work, making the Company civilly liable under § 1595.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss must be **DENIED**. Defendants ask this Court to ignore specific, documented allegations of federal crimes in favor of a narrative that Plaintiff was a "volunteer" or that this is a mere "employment dispute."  This characterization is shattered by the evidentiary record attached to the Complaint.  Plaintiff has pled far more than "labels and conclusions."  Defendants' arguments require "fact-finding," which is improper at Rule 12.  Plaintiff has provided a factual roadmap, supported by audio and financial exhibits, that satisfies **every element** of the **Trafficking Victims Protection Reauthorization Act ("TVPRA")**, 18 U.S.C. §§ 1589 and 1595:

**Element 1:  LABOR WAS "OBTAINED"  _(Not Volunteered)_:**

The record proves Plaintiff was a professional.  Defendants previously **paid** Plaintiff for these exact services at **$75.00 per hour** (Invoice #005).  A company does not pay hourly invoices to a "volunteer" **(See Exhibit C)**.

**Element 2:  PROHIBITED MEANS _(Threats to Third Party)_:**

The Audio Transcripts prove Defendant Riviezzo used prohibited means to coerce the labor. His recorded threat, **"If you shut down the service... the pay will be cut off – all of it,"** and his threat that **"Michael is going to get fired,"** constitute _"threats of serious harm to... another person"_ under 18 U.S.C. § 1589(a)(2) **(See Exhibit A)**.

**Element 3:  CAUSATION _(The Link)_:**

The timeline proves the threats were the cause of the labor.  Plaintiff worked for 10 weeks under these threats.  When he finally stopped on October 7, 2015, Defendants executed their threat less than 24 hours later **(See Exhibit E)**.

**Element 4: SCIENTER (*Intent*):**

Defendant Riviezzo, a licensed attorney in the State of New York, knew or should have known that conditioning a third party's employment on forced labor was unlawful.

Finally, Defendant Riviezzo's **procedural attempt to dismiss for insufficient service** is **meritless**. Plaintiff, proceeding *in forma pauperis*, fulfilled his duty by submitting the **USM-285** forms on **October 27, 2025 (See Exhibit D)**. He cannot be penalized for the administrative delays of the U.S. Marshals Service.

**WHEREFORE**, Plaintiff Kenichi Ninomiya respectfully requests that this Honorable Court:

1. **DENY** Defendant Brane-Strom, LLC's Motion to Dismiss [ECF No. 23];

2. **DENY** Defendant Charles D. Riviezzo's Motion to Dismiss [ECF No. 28];

3. **ORDER** the U.S. Marshals Service to complete personal service on Defendant Riviezzo if not already perfected; and

4. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

Kenichi Ninomiya
5646 Merry Oaks Road
The Plains, Virginia  20198
Email:  admin@kmit24.com
Tel.:  (571) 645-5557

*Plaintiff, Pro Se*

Dated:  **January 28, 2026**

## CERTIFICATE OF SERVICE

I hereby certify that on **January 28, 2026**, I filed the foregoing PLAINTIFF'S CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS with the Clerk of Court for the Eastern District of Virginia.

I further certify that a true and correct copy of the foregoing was served via USPS Priority Mail to counsel for Defendants:

>Janea J. Hawkins, Esq. (VSB No. 95202)
>Alexander P. Berg, Esq. (VSB No. 95557)
>**Littler Mendelson, P.C.**
>1800 Tysons Blvd., Suite 500
>Tysons Corner, VA 22102
>Telephone: 703.286.3117
>Facsimile: 703.852.7080

Kenichi Ninomiya
*Plaintiff, Pro Se*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
_____Alexandria_____DIVISION

Kenichi Ninomiya
_____Plaintiff(s),_____

v.

Charles D. Riviezzo
Brane-strom, LLC
_____Defendant(s),_____

Civil Action Number: 1:25-cv-01692-MSN-LRV

## LOCAL RULE 83.1 (N) CERTIFICATION

**I declare under penalty of perjury that:**

No attorney has prepared or assisted in the preparation of _Plaintff's Consolidated memorandum in_
(Title of Document)
Opposition to Deffendant's motion to dismiss

Kenichi Ninomiya
Name of _Pro Se_ Party (Print or Type)

_____(signature)_____
Signature of _Pro Se_ Party

Executed on: _1-28-26_ (Date)

**OR**

The following attorney(s) prepared or assisted me in preparation of _____.
(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of _Pro Se_ Party (Print or Type)

_____
Signature of _Pro Se_ Party

Executed on: _____(Date)