UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KENICHI NINOMIYA,
          *Plaintiff,*

    v.

CHARLES D. RIVIEZZO, *et al.*,
          *Defendants.*

No. 1:25-cv-01692-MSN-LRV

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenichi Ninomiya, *pro se*, brought this action against Defendants Charles D. Riviezzo and Brane-Strom, LLC, ("Brane-Strom") alleging that Defendants forced him to provide labor in violation of the Trafficking Victims Protection Act of 2000 ("TVPA"), 18 U.S.C. §§ 1589, 1595. Defendants now move to dismiss (ECF Nos. 23, 28), contending that Plaintiff failed to properly serve Riviezzo and has failed to state a claim. For the reasons that follow, the Court declines to invalidate service of process but otherwise grants Defendants' Motions to Dismiss.[1]

## I.      BACKGROUND[2]

Plaintiff alleges that he is an information technology ("IT") specialist who began working for Brane-Strom in 2015. *See* ECF 20 ¶ 1. Brane-Strom is a limited liability company based in Loudoun County, Virginia that appears to broadcast horse racing. *See id.* ¶¶ 10-11. At the time of Plaintiff's work for Brane-Strom, Riviezzo served as its Chief Executive Officer and General

---

[1] Plaintiff has also moved for appointment of counsel. ECF 10. Because the Court dismisses his Amended Complaint, it will deny Plaintiff's motion to appoint counsel as moot.

[2] On a motion to dismiss, the Court assumes the truth of Plaintiff's factual allegations and draws all reasonable factual inferences in Plaintiff's favor. *Johnson v. Balt. City*, 163 F.4th 808, 814 (4th Cir. 2026).

Counsel. *Id.* ¶ 9.Plaintiff's husband, Michael Oliver, also worked for Brane-Strom under Riviezzo's supervision. *Id.*

Between June and October 2015, Plaintiff provided Brane-Strom with IT services, including network configuration, server repairs, remote administration, hardware support, and maintenance of systems required to deliver horse-racing broadcast feeds. ECF 20 ¶ 11. Plaintiff expected that he would be compensated for his work and submitted invoices to Brane-Strom. *Id.* ¶¶ 13-14. Brane-Strom, however, failed to pay him. *See id.* ¶ 16.

On July 18, 2015, Plaintiff informed Riviezzo that he could not continue working without pay. *Id.* ¶ 19. Riviezzo responded by telling Plaintiff, "[i]f you shut down the service, the pay will be cut off—all of it!" *Id.* ¶ 20. Plaintiff believed that Riviezzo's reference to "pay" meant that, if Plaintiff did not continue providing IT services, Brane-Strom would not pay Oliver, eliminating their household's sole source of income. *Id.* ¶ 21. Plaintiff therefore continued to work without being paid.

On August 24, 2015, Plaintiff again expressed to Riviezzo that he needed to be paid for his work. ECF 20 ¶ 23. Riviezzo stated in response, "[i]f you don't do it, and she can't get the horse races, then [Oliver] is going to get fired."[3] *Id.* ¶ 24. Plaintiff again understood Riviezzo's comment to be a threat that if he did not continue to perform unpaid labor, Oliver would lose his job, and so Plaintiff continued to work for Brane-Strom for free for ten more weeks. *Id.* ¶¶ 25, 28.

By October 7, 2015, Plaintiff had had enough and quit. *Id.* ¶ 30. The following day Defendants terminated Oliver's employment. *Id.* ¶ 31.

Almost ten years later, on October 6, 2025, Plaintiff filed a Complaint with this Court alleging that Defendants had forced him to provide labor in violation of the TVPA. ECF 1. The

---

[3] The identity of the woman referenced in the Amended Complaint is unclear.

2

Court granted Plaintiff's Motion to Proceed *In Forma Pauperis*, thereby directing the United States Marshals Service ("USMS") to serve Defendants. *See* ECF 8; *see also* Fed. R. Civ. P. 4(c)(3). USMS was able to serve Brane-Strom (ECF 11) but was unable to serve Riviezzo (ECF 35). Plaintiff, meanwhile, filed an Amended Complaint (ECF 20), which both Brane-Strom and Riviezzo moved to dismiss (ECF Nos. 23, 28).

After Riviezzo raised improper service in his Motion to Dismiss (ECF 29 at 7-9), Plaintiff moved for an extension of time to effectuate service (ECF 36). The Court granted Plaintiff's Motion and ordered USMS to attempt to serve Riviezzo at his business address in New York. ECF 38. On March 20, 2026, USMS served a copy of Plaintiff's Amended Complaint on the receptionist at Riviezzo's business address. ECF 40. Then on May 8, 2026, USMS mailed a copy of Plaintiff's Amended Complaint to Riviezzo's business address via Federal Express. ECF 44.

The parties separately completed briefing on Defendants' Motions to Dismiss, which are now ripe for review.

## II.      ANALYSIS

### A.      Service of Process

Riviezzo argues that the Court must dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(5) because Plaintiff failed to properly serve him. ECF 29 at 7-9. Riviezzo filed his Motion to Dismiss before Plaintiff's latest attempts at service. But, following USMS's service of the receptionist in his office building, Riviezzo filed a Notice contending that Plaintiff's service is still insufficient and warrants dismissal of the Amended Complaint. ECF 41.

Federal Rule of Civil Procedure 4(e) governs service of process for individuals within the United States. A defendant who is not properly served may move to dismiss the complaint under Rule 12(b)(5). "Once challenged, the burden of establishing validity of service under Federal Rule

3

of Civil Procedure 4 shifts to the plaintiff." *Sanyal v. Toyota Motor Corp.*, No. 1:14-cv-906 JCC/JFA, 2014 WL 4925842, at *1 (E.D. Va. Sept. 30, 2014).

The rules of service "are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). However, "[w]hen the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction." *Id*. In other words, if a defendant receives actual notice of the complaint, "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Id*. Rather, courts must "carefully consider the entire circumstance of the case before it to determine whether dismissal is appropriate." *Simmons v. TransUnion, LLC*, 712 F. Supp. 3d 629, 636 (D. Md. 2024).

Plaintiff did not technically comply with Rule 4(e)'s requirements. Rule 4(e) instructs that a plaintiff properly serves a defendant so long as they follow the rules of the state where service is made. Fed. R. Civ. P. 4(e)(1). Here, Plaintiff attempted to serve Riviezzo at his business address in New York, meaning that service is proper if he complied with New York's rules of personal service. Under New York's Civil Practice Law and Rules, a plaintiff may serve a party by both delivering and mailing a copy of the summons to the person's place of business. N.Y. C.P.L.R. § 308(2). The delivery and mailing must occur within twenty days of each other and the mailing must be stamped "personal and confidential." *Id.* In this case, USMS both delivered and mailed a copy of the summons to Riviezzo's business address but did so more than a month apart, thereby failing to comply with the twenty-day requirement. ECF 40, 44.

Nevertheless, the Court concludes that Riviezzo has received adequate notice of the Amended Complaint and declines to dismiss Plaintiff's suit on the basis of his technical failure to comply with New York's service requirements. Plaintiff, who is reliant on USMS to serve his

4

Amended Complaint, *see* Fed. R. Civ. P. 4(c)(3), took reasonable steps to give Riviezzo notice of the action. When USMS was unable to effectuate service at the original address that Plaintiff provided, Plaintiff located a business address for Riviezzo. *See* ECF 36 at 3. After USMS left the summons with the receptionist at Riviezzo's business address, rather than personally serve Riviezzo himself, Plaintiff asked USMS to mail a copy of the summons to satisfy N.Y. C.P.L.R. § 308(2). ECF Nos. 42, 43. While USMS's service attempts via delivery and mail did not occur within the requisite twenty days, that timing was largely out of Plaintiff's control and the record shows that Plaintiff has been more than diligent in attempting to give Riviezzo notice of the case against him. *See Abdelhamid v. Summit Ridge Energy, LLC*, No. 1:24-CV-1553 (RDA/IDD), 2025 WL 2771670, at *2 (E.D. Va. Sept. 29, 2025) (denying motion to dismiss for inadequate service where plaintiff "took steps reasonably calculated to give notice to Defendant"). Moreover, Riviezzo indisputably has actual notice of this action and has not identified any prejudice stemming from Plaintiff's method of service. *See Simmons*, 712 F. Supp. 3d at 636-37 (concluding that service was adequate despite plaintiff's technical failure to comply with the applicable service rules because defendants had actual notice of the suit and had not been prejudiced by the error). Construing N.Y. C.P.L.R. § 308(2) liberally, Plaintiff has adequately effectuated service and Riviezzo's Motion to Dismiss under Rule 12(b)(5) will be denied.

### B.    Rule 12(b)(6)

Defendants also argue that Plaintiff's Amended Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim under the TVPA.

"A motion to dismiss tests the sufficiency of a complaint." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016) (internal quotation marks omitted). At the pleading stage, the Court must "accept the complaint's factual allegations as true and construe the facts in the light

5

most favorable to the plaintiff." *Johnson v. Balt. City*, 163 F.4th 808, 814 (4th Cir. 2026). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where a plaintiff proceeds *pro se*, courts liberally construe the plaintiff's pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Plaintiff's Amended Complaint purports to bring two claims: (1) forced labor in violation of 18 U.S.C. § 1589(a)(2); and (2) forced labor in violation of 18 U.S.C. § 1595(a). ECF 20. Section 1589, however, creates criminal penalties for individuals who obtain another's labor by force. 18 U.S.C. § 1589. Section 1595 creates a civil cause of action that permits victims of trafficking offenses to sue for violations of § 1589. *See* 18 U.S.C. § 1595(a); *see also Roe v. Howard*, 917 F.3d 229, 241 (4th Cir. 2019). The Court thus construes Plaintiff's Amended Complaint as bringing a single cause of action under § 1595(a) against Defendants for violating the TVPA's prohibition on forced labor under § 1589.[4]

"Section 1589 was 'passed to implement the Thirteenth Amendment against slavery or involuntary servitude.'" *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017), *as amended* (Mar. 3, 2017) (quoting *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014)). The statute prohibits individuals from "knowingly provid[ing] or obtain[ing] the labor or services of a person by any one of, or by any combination of, the following means":

---

[4] Defendants argue that Plaintiff has failed to state a claim under 18 U.S.C. § 1595 because § 1595 only creates civil liability for sex trafficking offenses under 18 U.S.C. § 1591. ECF 24 at 11; ECF 29 at 16. But Defendants misread the scope of Section 1595 liability. The provision creates a civil cause of action that permits victims to sue perpetrators for any of the trafficking offenses specified in chapter 77 of Title 18 of the U.S. Code. 18 U.S.C. § 1595(a); *Roe*, 917 F.3d at 241. Chapter 77 includes the TVPA's prohibition on forced labor codified at 18 U.S.C. § 1589, at issue here. *Roe*, 917 F.3d at 241.

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a).

To establish a violation of 18 U.S.C. § 1589(a), a plaintiff must first show that the defendant "knowingly provided or obtained the labor or services of the [plaintiff] through one or more of the methods" prohibited by the statute. *See United States v. Luong*, 125 F.4th 147, 154 (4th Cir. 2025) (cleaned up). A plaintiff must then show "that the threat of harm was 'sufficiently serious to compel [the plaintiff] to remain' in the condition of servitude when the [plaintiff] otherwise would have left." *Id.* (quoting *Muchira*, 850 F.3d at 618) (emphasis omitted). Harm for purposes of the TVPA may be "physical or nonphysical, including psychological, financial, or reputational." 18 U.S.C. § 1589(c)(2). "The harm or threat of harm is 'considered from the vantage point of a reasonable person in the place of the [plaintiff].'" *Luong*, 125 F.4th at 154 (quoting *Muchira*, 850 F.3d at 618). Finally, the plaintiff must allege that the defendant acted with sufficient scienter. *Muchira*, 850 F.3d at 618. In other words, the plaintiff must allege that the employer intended to cause the plaintiff to believe that he would suffer serious harm if he did not continue to work. *Id.*

To determine whether an employer's conduct was sufficiently serious to coerce a victim to provide labor or services against his will, courts must "consider the particular vulnerabilities of a person in the victim's position." *Muchira*, 850 F.3d at 618 (quoting *United States v. Rivera*, 799 F.3d 180, 186 (2d Cir. 2015)). Courts also assess whether a victim's "acquiescence [would] be objectively reasonable under the circumstances." *Id.* (quoting *Rivera*,

7

799 F.3d at 186-87) (emphasis omitted). Courts thus typically conclude that forced labor has occurred in cases involving "squalid or otherwise intolerable living conditions," "extreme isolation," "threats of inflicting harm upon the victim or others," and "exploitation of the victim's lack of education and familiarity with the English language, all of which are used to prevent vulnerable victims from leaving and to keep them bound to their captors." *Id.* at 618-19 (cleaned up).

Here, Plaintiff argues that Defendants obtained his forced labor by threatening him with serious harm, in violation of 18 U.S.C. § 1589(a)(2), and by means of a plan or scheme intended to cause him to believe that he would suffer serious harm, in violation of 18 U.S.C. § 1589(a)(4). ECF 33 at 7-8. Plaintiff, however, has not plausibly alleged a threat or scheme that would have subjected him to serious harm within the meaning of the TVPA. Accordingly, under either theory, Plaintiff fails to state plausible claim for relief.

In his Amended Complaint, Plaintiff alleges that Riviezzo obtained his labor by threatening to stop paying or to fire Plaintiff's spouse if Plaintiff did not keep working without pay.[5] ECF 20 ¶¶ 41-43. He also argues that Riviezzo's threats constituted a "scheme" to make him believe that he would suffer serious financial harm if he did not continue his work. *See* ECF 33 at 4.

The threat of losing out on future income is not the type of severe financial harm that can give rise to a forced labor claim under the TVPA. On the contrary, courts have permitted TVPA claims to move forward based on threats of financial harm only where employers led victims to believe that, if they quit, they would owe the employer substantial sums of money. *See United*

---

[5] Plaintiff includes additional allegations in his Opposition to Defendants' Motions to Dismiss. *See* ECF 33 at 2-6, 8-9. It is "well-established," however, "that parties cannot amend their complaints through briefing," *Lokhova v. Halper*, 441 F. Supp. 3d 238, 264 n.24 (E.D. Va. 2020) (quoting *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)), *aff'd*, 995 F.3d 134 (4th Cir. 2021), and so the Court declines to consider these new allegations.

*States v. Dann*, 652 F.3d 1160, 1171 (9th Cir. 2011) (concluding that the defendant threatened the victim with severe financial harm where the victim was an "immigrant without access to a bank account and not a dollar to her name" and the employer told her "that she would *owe* money if she left"); *Claros v. Marvin's Refrigeration Corp.*, 800 F. Supp. 3d 391, 397-98 (N.D.N.Y. 2025) (concluding same where defendants told immigrant victims in an isolated town that they owed defendants $20,000 and needed to continue working to pay this debt off); *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 438 (E.D.N.Y. 2017) (concluding same where the victim was threatened with the prospect of a $25,000 contract termination fee if she quit and defendants sued her for both the $25,000 fee and $250,000 in tort damages).

Furthermore, Plaintiff has not alleged any particular vulnerabilities that would have rendered him unable to leave Defendants' employment. *See Muchira*, 850 F.3d at 618 (explaining that characteristics such as youth or immigration status can "bear on whether the employee's labor was obtained by forbidden means" (internal quotation marks omitted)). Quite the opposite; Plaintiff alleges that he is a skilled employee able to perform "advanced information-technology services." ECF 20 ¶ 11.

Finally, Plaintiff's Amended Complaint shows that he was able to freely leave Defendants' employment when he so chose. *See id.* ¶ 30 (alleging that Plaintiff voluntarily quit on October 7, 2015). While Defendants' threats may have made that decision more difficult, Plaintiff was able to walk away "the first time [he] tried." *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1177 (9th Cir. 2012) (rejecting forced labor claims where plaintiffs lacked financial support but were free to leave when they wished).

As the Fourth Circuit has admonished, the TVPA "serve[s] a much different purpose" than do minimum wage requirements and other employment laws. *Muchira*, 850 F.3d at 624-25. Its

provisions "are not intended to redress every bad employment relationship" but to criminalize "the act of coercing persons into providing labor and services against their will and by providing a civil remedy to the victims of such actions." *Id.* at 625. Plaintiff's Amended Complaint evinces a troubling set of facts. But it does not plausibly allege that Defendants procured Plaintiff's forced labor through threats or a scheme of serious financial harm. Accordingly, the Court will grant Defendants' Motion to Dismiss and dismiss Plaintiff's Amended Complaint with prejudice.

## III.    CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant Bane-Strom's Motion to Dismiss for Failure to State a Claim (ECF 23) is GRANTED; it is further

ORDERED that Defendant Riviezzo's Motion to Dismiss for Failure to State a Claim (ECF 28) is GRANTED IN PART and DENIED IN PART; it is further

ORDERED that Plaintiff's Motion for Appointment of Counsel (ECF 10) is DENIED as moot; it is further

ORDERED that Plaintiff's Amended Complaint (ECF 20) is DISMISSED WITH PREJUDICE.

The Clerk is hereby directed to enter judgment against Plaintiff and in favor of Defendants pursuant with Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

**SO ORDERED.**

_____
/s/
Michael S. Nachmanoff
United States District Judge

June 29, 2026
Alexandria, Virginia